AMOCO PRODUCTION COMPANY, a Delaware Corporation, Petitioner,

v.

WYOMING STATE BOARD OF EQUALIZATION, Respondent.

No. 89–249.

Supreme Court of Wyoming.

Sept. 5, 1990.

Lawrence J. Wolfe of Holland & Hart, Cheyenne, Alan Poe and Karen E. Schauble of Holland & Hart, Denver, Colo., for petitioner.

1. The "value of the gross product" determines the amount of severance tax due. W.S. 39–6–302 (May 1985 Repl.).

2. Amoco labels these corrections to the mineral's value, prior period adjustments. These adjustments related to prior production periods.

Joseph B. Meyer, Atty. Gen., Mary B. Guthrie, Sr. Asst. Atty. Gen., Michael L. Hubbard, Sr. Asst. Atty. Gen., Cheyenne, for respondent.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

GOLDEN, Justice.

Appellant (Amoco) seeks a refund of $3.5 million it claims it overpaid in oil and gas severance taxes from 1978 to 1984. On March 15, 1986, Amoco sent the Wyoming Department of Revenue and Taxation (Department) a letter stating that, based upon several reporting and accounting corrections, Amoco was lowering the value[1] of its gas production for 1978–1984. Based on the lower value, Amoco claimed it overpaid its severance tax during those years and asked the Department to refund the overpayments.[2]

Acting on the attorney general's advice, the Department told Amoco that only those severance taxes "paid two years prior to the receipt of an application for refund" would fall within the statute of limitations found in W.S. 39–6–304(g) (May 1985 Repl.).[3] The statute provides that "[a]ny excess tax found to have been paid, whether as the result of overpayment, an appeal or an erroneous assessment shall be refunded to the person paying the tax. *All applications for refunds shall be made within two (2) years from the payment of the erroneous tax.*" (emphasis added). The Department denied those "portions of [Amoco's] claim which represent[ed] payment dates older than August 18, 1984 * * *."

Amoco appealed the Department's decision to the Wyoming State Board of Equalization (Board). Amoco claimed the Department had a long-standing interpretation that the refund statute did not apply to

The remainder of the opinion will use the term adjustments.

3. W.S. 39–6–304(g) was repealed and replaced in 1988. *See* W.S. 39–6–304(n) (Cum.Supp. 1989). The earlier statute provides the law of the case.

valuation adjustments and, therefore, it should not be permitted to "abandon" that interpretation. After conducting a hearing, the Board found that "any request for refund of severance tax payments made outside of the statutory limit of two years expressed by W.S. 39–6–304(g) would be beyond the authority of the Department."

In response to Amoco's claim that the statute is ambiguous, the Board ruled that W.S. 39–6–304(g)

> states quite clearly and unambiguously that any application for refund "shall be made" within two years from the payment of the erroneous tax. The statute clearly requires that any application for a refund must be made within two years from a definitive event, that is, the payment of the tax in question.

The Board rejected Amoco's claim that refunds resulting from an adjustment fall outside the statute:

> The [refund] application requirement contained in [the statute] is simply a statutory prerequisite that must be fulfilled prior to the refund of any severance taxes. Placing any other interpretation on the provisions of that statute would ignore not only the plain language of the statute, but would also fail to give appropriate effect to the second sentence of the statutory provision. An application for refund within two years of payment of the alleged erroneous tax is clearly a prerequisite to any refund requested.

The Board concluded that "[t]he Wyoming legislature, in this instance, has exercised its power to set a time limitation after which a refund could not be claimed under W.S. 39–6–304[g]." Applying the above findings, the Board ruled that Amoco was

entitled to a "refund of any erroneous tax paid on or after March 12, 1984, and before March 12, 1986."

Amoco petitioned the district court for review of the Board's decision. The district court certified the appeal to this court.

Amoco raises two issues:

I. Did the Board err in holding that the two-year limitation period contained in Wyo.Stat. § 39–6–304(g) (1977) for refunds of severance tax applied to Amoco's prior period adjustments?

II. Did the Board incorrectly apply the two-year statute of limitations and therefore err in its determination of the refund to which Amoco is entitled?

We affirm the Board's ruling on Issue I, and reverse and remand the Board's ruling on Issue II.

■ Whether an agency's findings are supported by substantial evidence [4] and whether an agency's conclusions are in accordance with the law comprise the standard of review. *Employment Security Commission of Wyoming v. Western Gas Processors, Ltd.,* 786 P.2d 866, 871 (Wyo. 1990). In reviewing an agency decision, courts allow an agency room to implement and administer its statutory responsibilities. *Pathfinder Mines Corporation v. State Board of Equalization,* 766 P.2d 531, 536–37 (Wyo.1988).

■ Amoco agrees that the statutory language, as it was worded, required the taxpayer to file the refund request within two years of the payment. It claims, however, the Department applied the statute inconsistently and allowed certain types of refunds outside the two-year period. Adjustments, according to Amoco, fell into

---

4. "Substantial evidence is relevant evidence which a reasonable mind might accept in support of the conclusions of the agency." *State of Wyoming, ex rel. Wyoming Workers' Compensation Division v. Borodine,* 784 P.2d 228, 232 (Wyo.1989) (citations omitted) (quoting *Trout v. Wyoming Oil and Gas Commission,* 721 P.2d 1047, 1050 (Wyo.1986)).

In *Big Piney Oil & Gas Company v. Wyoming Oil and Gas Conservation Commission,* 715 P.2d 557 (Wyo.1986), we reviewed the application of substantial evidence:

> If there is substantial evidence to support a finding, * * * the ultimate weight to be given that evidence is to be determined by the agency in light of its expertise and the experience of its members in such matters. * * * If the agency's decision is found to be supported by substantial evidence, we cannot substitute our judgment for that of the agency, but we are required to uphold its findings upon appeal. *Id.* at 562. (citations omitted).

that category. The reason, Amoco argues, the Department allowed it to file adjustments outside the two-year period is that the statute's use of "payment of the erroneous tax" to trigger the two-year refund period created a problem. At the time the payment was made, Amoco contends, it was not "erroneous." It was the later adjustment which rendered it erroneous.[5] Nonetheless, if two years had elapsed since the payment it would have been barred from applying for a refund. According to Amoco the Department recognized Amoco's dilemma and allowed it to file adjustments outside the two-year period. Therefore, Amoco concludes, the Department's practice created the ambiguity in the statute.

Amoco's argument misses the mark. If, in fact, the statute was not being enforced as the legislature intended, the Department acted properly when it corrected that oversight. *See Pathfinder Mines.* Whether the statute was applied in an inconsistent manner is a different question from whether the statute itself is ambiguous. The language of the statute provides no exception for adjustments outside the two-year statute of limitations. Amoco's argument, if adopted, would result in this court's legislating an exception to the statute based upon an agency's apparently inconsistent application of that statute.[6] That is not our role.

The judiciary's role when interpreting a statute is a narrow one: "[W]e look first to the language of the statute. If the statutory language is clear and unambiguous, we will not look at statutory rules of construction, nor will we attribute another meaning to the statute. We will give the statute effect according to its plain and obvious meaning." *Amoco Production Company v. Hakala,* 644 P.2d 785, 789 (Wyo.1982) (citations omitted). Applying this narrow standard, we find that W.S.

39–6–304(g) is clear, and it applies to the adjustments submitted by Amoco.

In support of its argument, Amoco cites our decisions in *State Board of Equalization v. Tenneco Oil Company,* 694 P.2d 97 (Wyo.1985), *Atlantic Richfield Company v. Board of County Commissioners, County of Sweetwater,* 569 P.2d 1267 (Wyo.1977), and *Hercules Powder Co. v. State Board of Equalization,* 66 Wyo. 268, 208 P.2d 1096, *reh. denied,* 66 Wyo. 268, 210 P.2d 824 (1949).

The cases cited by Amoco are distinguishable. In *Tenneco Oil,* we found the statute ambiguous, which is not the case here. The tax refund statute in *Atlantic Richfield* did not include a statute of limitations. In fact, we included language in *Atlantic Richfield* that supports our ruling today: "This is not to say that the legislature could not set a time limitation, commencing with the accrual of the cause of action, after which a claim could not be filed under [the tax refund statute]." *Id.* 596 P.2d at 1275. The issue in *Hercules* involved an agency's attempt to change its prior interpretation of a "plain rule." That is not the case here; the agency is enforcing an unambiguous statute. Additionally, *Hercules* involved an administrative rule rather than a legislative statute. Thus, *Hercules* is inapposite to the case at bar and does not require that the statute of limitations only be applied prospectively.

We find little merit in Amoco's pointing to other instances where the Department may or may not have applied the statute as written. Our ruling today only addresses the issue of whether the statute applies to the adjustments filed by Amoco. We do not decide whether the Department has correctly applied the statute in other instances.

Amoco also claims that the Department should be estopped from altering its

**5.** Amoco states that it is required by Wyo.Const. art. 15, § 3 and the Wyoming statutes to report changes in the mineral's value (adjustments).

**6.** Amoco argues that it was not always able to foresee when later accounting and reporting corrections might result in subsequent adjustments (e.g., when a take-in-kind interest owner

would submit revised figures) and, therefore, it was difficult to meet the two-year period. We do not disagree with this claim. The legislature, however, drafted the statute to place the burden of compliance on Amoco. Absent legislative direction, this court will not shift that burden.

practice of allowing refunds outside the two-year period. An agency is not estopped from enforcing a clear and unambiguous statute. *See also* our discussion of estoppel vis-a-vis governmental officials in *State Highway Commission of Wyoming v. Sheridan–Johnson Rural Electrification Association*, 784 P.2d 588 (Wyo. 1989). For the reasons set forth above, we also reject Amoco's argument that the Department must provide a reasoned explanation before it applies the statute of limitations to adjustments.

The last issue is whether the Board incorrectly calculated the amount of refund due. We agree with the Board's order that Amoco is "entitled to a refund of any erroneous tax paid on or after March 12, 1984, and before March 12, 1986." The record, however, does not illuminate how the Board arrived at the figure of $192,001.82 as the amount of refund Amoco was entitled to for that period. Therefore, we remand the case for the Board to recalculate the amount of refund due Amoco for the erroneous tax it paid on or after March 12, 1984, and before March 12, 1986.[7] Finally, we add that, contrary to the Board's argument, the statute's use of the term "payment" means when the severance tax was actually paid, not when the tax payment was due. In recalculating the amount due Amoco, this is the meaning that should be ascribed to "payment."

Thus, we find the Board's findings on Issue I supported by substantial evidence and in accordance with the law. Although we agree with the Board on Issue II as to the time period subject to refund, March 12, 1984 through March 12, 1986, we reverse and remand for the Board to recalculate the amount of refund due Amoco for that period, applying "payment" as defined above.

---

7. Apparently there is ongoing audit that may affect the amount of refund due Amoco.